No. 11-40783

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

GABRIEL ANDRES,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
(Laredo Division)

_____

REPLY BRIEF FOR APPELLANT
_____

LAW OFFICE OF MARGARET SCHMUCKER

MARGARET SCHMUCKER
13706 Research Blvd., Suite 211-F
Austin, Texas 78750
Tel: (512) 236-1590
Fax: (877) 465-7066

ATTORNEY FOR APPELLANT,
GABRIEL ANDRES

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    ISSUE ONE: Whether the evidence against Andres' should have been
    suppressed as the direct and indirect product of an illegal traffic stop,
    search, and seizure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    ISSUE TWO: Whether the District Court misapplied the sentencing
    guidelines when it overruled Andres' objection to the addition of two (2)
    points to his Offense Level calculation under U.S.S.G. § 3B1.4 because
    he did not use a minor to commit a crime.. . . . . . . . . . . . . . . . . . . . . . . . 7

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE WITH RULE 25.2. . . . . . . . . . . . . . . . . 9

CERTIFICATE OF COMPLIANCE WITH RULE 32(a). . . . . . . . . . . . . . . . 10

**ARGUMENT**

ISSUE ONE: Whether the evidence against Andres' should have been suppressed as the direct and indirect product of an illegal traffic stop, search, and seizure.

Initially, the Government argues that Sergeant Brody had reasonable suspicion to stop Andres based on his own observations of "a traffic violation" which the District Court deemed credible. Response Brief at 32-46. When there is a conflict between testimony in open court and documentary evidence, the trial court must make a credibility call. However, no deference to the district court's determination of credibility is required where it is based on clear error. *Lacoste v. Kramo, Ltd. (UK)*, 985 F.2d 557 (5th Cir. 1993) (not selected for publication). Here, the district court was forced to choose between the live testimony of Sergeant Brody on the one hand and the video evidence on the other. The video evidence is not merely a contradictory account of by another witness; it is an exact recording of what actually occurred. The video showed *no* swerving and *no* flickering lights. ROA 569. Moreover, Sergeant Brody admitted that his safety concerns about the alleged "swerving" were theoretical, ROA 558-559, and that the lights were properly plugged into the Dodge Ram's electrical system, ROA 570. Under such facts, the District Court's conclusion that Sergeant Brody's story about a dangerously swerving trailer and flickering lights is clear error.

Next the Government argues that  Sergeant Brody was authorized to ask Andres questions unrelated to his reason for stopping the vehicle "while the traffic stop was still being effectuated." Response Brief at 32-46.  The Government's argument is unhelpful.  For reasons more fully explained in Andres' opening brief, Sergeant Brody's questions came "after" the traffic stop should have been completed. Appellant's Brief at 15-19.  The Government cites no case which provides similar facts and reaches a contradictory conclusion to those cited by Andres.  And the Government's claim that Sergeant Brody properly ordered Andres "out of the truck in order to show him the trailer hitch and taillight connection and explain that there might be a loose connection" is nothing more than subterfuge.  To reiterate, Sergeant Brody admitted that the lights were properly plugged into the electrical system.  ROA 570.  Hence, there was nothing to explain.  Sergeant Brody's actions were thus *not* "incident to a lawful traffic stop" but instead obviously intended to prolong the detention by several minutes in order to give him more time to investigate.

Next the Government argues that Sergeant Brody developed additional reasonable suspicion to continue the detention "during the traffic stop" Response Brief at 32-46.  This argument is equally unavailing.  Again, the conduct which gave rise to Sergeant Brody's "additional" suspicions did not arise until "after" the traffic stop should have been completed. Specifically, Sergeant Brody testified that he did

*not* observe Andres exhibit "extreme nervousness" until after he had been given the written warning. ROA 581 ("He had already received a written warning..."). And for reasons previously discussed, Sergeant Brody had already detained Andres longer than was necessary to accomplish this. Furthermore, Andres only became nervous when Sergeant Brody began asking questions unrelated to the traffic stop. ROA 578-579. The combination of being detained longer than required, ordered out of one's vehicle for no good reason, then questioned about unrelated matters – all without first being advised of the right to just leave – would make even the most honest citizen visibly upset or nervous. Nevertheless, the Government further attempts to justify Sergeant Brody's conduct by arguing that an officer may rely on his experience. Response Brief at 37. Alas, this is simply not the issue. The issue is the chronology of events. And that chronology – as recorded by the video – reveals that Sergeant Brody detained Andres longer than necessary to issue a warning in order to conduct an unrelated investigation.

Finally, the Government argues that the Laredo Agents' use of the GPS tracking device did not affect the legality of Sergeant Brody's traffic stop and is otherwise not reversible error under the plain error standard of review. Response Brief at 40. The immediate and obvious flaw in the Government's argument is that the warrantless installation of the GPS device need not have contributed to the traffic

stop; the installation was *itself* an illegal search. *United States v. Jones*, — S.Ct. —, 2012 WL 171117, at \*3 (Jan. 23, 2012). And to the extent *that* search provided a basis for a further physical search of the Dodge Ram, any evidence obtained therefrom constituted fruits of the poisonous tree. Such is the case here.

According to the Government, Andres "gave Brody answers which Brody knew to be untruthful based upon his *collective* knowledge." Response Brief at 27 (emphasis added). The *collective* knowledge to which the Government refers includes knowledge illegally gained from the GPS device regarding Andres' route of travel. The Government stipulated that based on GPS readings, Laredo agents notified Illinois State Police (ISP) that the Dodge Ram would arrive in Chicago early the following morning carrying drugs. ROA 287 ¶¶ 8. That afternoon, and in anticipation of the Dodge Ram's arrival, ISP officers positioned themselves near all major exits along northbound I-55 between Wilmington and Bolingbrook to look for the vehicle. ROA 287 ¶ 10. *See also* ROA 496 (ISP agents also tracking by GPS). At the suppression hearing, Sergeant Brody testified that Andres only became nervous when he was asked where he was coming from. ROA 578. Andres responded "Joliet." ROA 578. Sergeant Brody testified that this was "completely contrary to" the information he already possessed from the other officers along I-55, ROA 579, 583, and those offers were only looking for the Dodge Ram along I-55

because that's where the illegally installed GPS told them he would be, ROA 287 ¶¶ 8, 9. Notably, it was *this* inconsistency of Andres' answer with illegally obtained evidence which initially aroused Sergeant Brody's "additional" suspicion and was a proximate cause of the ultimate search of the Dodge Ram. The Government not only agrees, but argues this very point. Response Brief at 37-38. Accordingly, even if it can reasonably be argued that the traffic stop was lawful, the subsequent search of the vehicle was nevertheless tainted by the Government's warrantless use of a GPS device.[1]

Alternatively, the Government argues that there is no evidence that authorities failed to obtain a warrant, that Andres did not object to authorities' use of the GPS tracking, and that because *United States v. Jones*, — S.Ct. —, 2012 WL 171117(Jan. 23, 2012), is new law, the Fourth Amendment did not constitute plain error.

The Government's argument regarding proof of no warrant is specious. During the suppression hearing the Government questioned authorities about events in Laredo leading up to the installation of the GPS device on the Dodge Ram. None of the Government's witnesses testified to seeking or obtaining a warrant. In contrast,

---

[1] The allegedly "anonymous" tipster does not cure the constitutional defect by providing independent cause for suspicion. The same Laredo agents who had placed the GPS and used it to follow the Dodge Ram also orchestrated a call to the ISP from an "anonymous" tipster about the vehicle. ROA 287 ¶¶ 8, 9; ROA 484 (Laredo Agent was "directing the informant to call").

those same witnesses volunteered that they had "intercepted telephone calls they had *on a Federal Title Three*" warrant. ROA 473 (emphasis added); *See also* ROA 476 (testifying to the "significant" work necessary "to get to a federal Three"); ROA 458 (referring to "Title Three information"). Furthermore, the Government's Stipulation of Facts states only that "Agents maintained visual surveillance of the Ram pickup truck until midnight. By midnight agents placed a Global Positioning (GPS) tracking device onto the ram pickup truck[.]" ROA 285-286 ¶ 5. Again, no mention of a warrant is made. This, in contrast to the stipulation that "federal law enforcement agents *pursuant to a valid court order*, intercepted conversations on a cellular telephone." ROA 284 ¶ 1 (emphasis added). The only "reasonable inference" from the witnesses' testimony and the Stipulation is that there was no warrant.

Finally, Andres' failure to specifically object to the warrantless use of a GPS tracking device does not require that this Court apply a "plain error" standard of review to Andres' claims that the traffic stop was illegal at its inception and lasted longer than necessary. These issues were both properly preserved for *de novo* review. GPS surveillance aided authorities in pinpointing the Dodge Ram's location on I-55, and was the basis of Sergeant Brody's "additional" suspicion to detain Andres longer than necessary for Sergeant Brody to issue a warning. Accordingly, authorities' warrantless installation of a GPS tracking device on a vehicle was not merely a

Fourth Amendment violation, it was a significant factor in determining whether the

District Court's ruling can withstand *de novo* review.

> ISSUE TWO: Whether the District Court misapplied the sentencing
> guidelines when it overruled Andres' objection to the addition of two (2)
> points to his Offense Level calculation under U.S.S.G. § 3B1.4 because
> he did not use a minor to commit a crime.

The Government argues that the district court adopted the PSR which noted

that "Andres used the child to provide the illusion they were merely traveling as a

family" because Gutierrez admitted that this was *her* intent.  Response Brief at 49.

The Government further argues that "the district court could infer that Andres had

'orchestrated the presence of his [alleged step-child and her daughter] in an attempt

to give the appearance of a family traveling together and thereby avoid detection by

law enforcement." Response Brief at 50. However, proof of Gutierrez's intent is not

proof that Andres, himself, "used or attempted to use a minor" by any of the manner

or means listed in note one of the comments to U.S.S.G. § 3B1.4.  Moreover, the

Government fails to explain how the district court could make this inference in the

face of undisputed evidence that when Chaparro returned the Dodge Ram and towed

vehicle to Andres, Gutierrez and her daughter were "already in the vehicle."  ROA

337.  Because Gutierrez's daughter was "already in the vehicle," and that Andres did

not, himself, take any affirmative action to secure the child's presence.

7

## CONCLUSION

WHEREFORE Defendant-Appellant Gabriel Andres respectfully requests that this Court either (1) reverse his conviction and remand for retrial with instructions that evidence obtained from the illegal seizure and search be suppressed, or (2) remand the case to the District Court for a hearing whether his consent to search cured any Fourth Amendment violation and, if so, for re-sentencing by a new judge utilizing a corrected Sentencing Guideline calculation, and (3) for all other relief to which he is lawfully entitled.

Respectfully Submitted,

*Margaret Schmucker*

Margaret Schmucker
Attorney for Defendant
Texas Bar No. 24030874

Law Office of Margaret Schmucker
13706 Research Blvd., Suite 211-F
Austin, Texas 78750

Phone (512) 236-1590
Fax (877) 465-7066
E-Mail M.Schmucker@AppellateCourtLaw.com

## CERTIFICATE OF SERVICE

I, Margaret Schmucker, certify that today, February 27, 2011 a copy of the brief for appellant, a copy of the record excerpts, was served upon Carmen Castillo Mitchell, Counsel for the Government by Notice of Docket Activity.

Signed *Margaret Schmucker*

Attorney for Defendant-Appellant

Dated: February 27, 2011

## CERTIFICATE OF COMPLIANCE WITH RULE 25.2

This brief complies with the e-filing requirements of Fed. R. App. Proc. 25.2 because:

X    the required privacy redactions have been made;

X    the electronic submission is an exact copy of the paper document; and

X    the document has been scanned for viruses using the most recent version of a commercial virus scanning program and is free of viruses.

Signed *Margaret Schmucker*

Attorney for Defendant-Appellant

Dated: February 27, 2011

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7) because:

X      this brief does not exceed 30 pages as a principal brief or 15 pages as a reply brief, or

☐      this brief contains [state the number under 14,000] words, excluding the parts of the brief exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii), or

☐      this reply brief contains [state the number under 7,000] words.

2. This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. Proc. 32(a)(6) because:

X      this brief has been prepared in a proportionally spaced typeface using Times New Roman in 14 point Roman type, or

☐      this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

Signed   *Margaret Schmucker*
Attorney for Defendant-Appellant

Dated: February 27, 2011